PETER RUPPE AND GEORGE RUPPE v. DAISY PETERSON.

*Statute of frauds—Promise to pay debt of another.*

The *verbal* promise of a widow to pay a debt due from her husband's estate "if the creditors would *thereafter* furnish her goods on credit," which debt was not discharged, but remained a claim against the estate, is *void* under the statute of frauds.

Error to Houghton.   (Williams, J.)   Argued October 13, 1887.   Decided November 3, 1887.

Assumpsit.   Defendant brings error. · Reversed and judgment entered, by stipulation, for defendant's *individual* debt. The facts are stated in the opinion.

*T. L. Chadbourne,* for appellant.

*Stone & Gray,* for plaintiffs. ·

SHERWOOD, J.   John Peterson, the husband of the defendant, died on the twenty-second day of November, 1886. During his life-time he was engaged in selling goods, consisting of groceries and family supplies, at Portage Entry, in the county of Houghton.

The plaintiffs are general dealers in the same kind of goods, and have done business in the village of Hancock during the past 16 years, and John Peterson had been accustomed to purchase goods, to retail at his country store, of the plaintiffs' firm for 10 years previous to his death, and at the time of his death owed the plaintiffs a balance of account of $934.71.

After the death of her husband, Mrs. Peterson continued the retail trade at the store in Portage Entry down to the time this suit was brought, which was on the thirty-first day of January, 1887, and during this period the defendant pur-

chased goods of the plaintiffs' firm for her trade to the amount of $456.10.

At the date last named the plaintiffs brought their suit in assumpsit against the defendant for the two sums above stated, in the Houghton circuit, where the defendant made, before the trial, a written offer of judgment for the balance she was owing the plaintiffs for goods purchased by her since her husband's death, viz., $456.10. This was not accepted, and the trial resulted in a judgment for the plaintiffs for both items in their claim, amounting to the sum of $1,410.58.

The defendant brings error.

At the close of the trial the defendant's counsel requested the court to charge the jury that—

" The plaintiffs are only entitled to a verdict for the price of goods sold and delivered to her after her husband's death."

This the court refused, and counsel for defendant excepted.

At the request of counsel for the plaintiffs, the court submitted the following special questions to the jury:

"1. Did John Peterson, the husband of the defendant, owe plaintiffs a balance of $934.71, November 26, 1886?

" 2. Did the defendant, on the twentieth day of November, 1886, promise plaintiffs to pay said indebtedness of her husband if they would hereafter furnish her goods on credit?

" 3. Did plaintiffs thereafter furnish goods to defendant upon credit, in consideration of such promise?"

These questions were each answered in the affirmative by the jury.

The court charged the jury that if they found the defendant promised to pay for the goods bought by her husband, and for which he was owing when he died, if the plaintiffs would extend to her a line of credit, and such credit was afterwards given "according to the agreement," then the defendant was liable for such indebtedness of her husband. This charge, and the refusal by the court to give the defend-

ant's request, raised the only question in the case, the defendant's counsel claiming that, under our statute, the defendant's promise relied upon by the plaintiffs should have been in writing to be of any validity.  Some goods ordered by the husband had not been delivered when he died.

The following is the *substance* of all the testimony upon which the plaintiffs claim a promise on the part of Mrs. Peterson to pay her husband's indebtedness to them at the time he died, and upon which the judgment for that item was given.  The testimony was that given by one of the plaintiffs, George Ruppe, and is as follows:

"I did not see Mrs. Peterson until the day of her husband's funeral.  I saw her that day with reference to business matters.  She was here in Hancock that day, and I was taking her from my house on board the tug-boat.  She wanted to know if I would not send down those goods her husband ordered that were not sent, and that she would pay all the accounts that Mr. Peterson owed, and she wanted to keep on continuing the business.  I told her I was glad she was going on with the business, and I would assist her all I could, and would send the hams that day.

" *Q.* What, if anything, was said with reference to the old account?

" *A.* She said that she would pay her husband's account, if she was given more credit, so as to go on with the business; and she wanted me to give all the goods that was ordered, and not delivered yet.  I told her I would.  She said she would pay her husband's account, and would pay her own.

"She continued the trade upon credit, and run the bill mentioned here as having been offered.  On the same day I gave her these hams.  They amounted to $228.  She felt bad, and said she would come up in a week or ten days.  The goods went with her on the boat the same day, amounting to nearly $300.  She continued to trade the balance of November, December, and January.    *    *    *    *    *    *

"About a week or ten days afterwards she came up again.  She ordered further goods on that day  She stated to me she had gone on with the business.  We took no steps to have an administrator appointed.

"*Q.* Are these all the promises you rely upon in this cas^?

"*A.* Yes, sir.    There was another, which Mr. Stone thought was not material.

"This conversation that I have spoken of about business with Mrs. Peterson, wherein I claim she promised to pay her husband's debt, was had when she was passing out of my house, to get into the sleigh.    *    *    *    *    *    *

"*By the Court.* What entry did you make upon your books, if any, at the time you had this talk with this woman?

"*A.* I did not make any entry at that time, except when the goods were delivered.

"*By the Court.* I am speaking of the debt of the husband; did you make any entry?

"*A.* No, sir.

"*By the Court.* I want to know if you charged it to anybody else at that time; you say not,—you did not charge them to anybody else?

"*A.* No, sir."

Evidence was offered by the defendant tending to disprove the alleged promise of the defendant to pay the indebtedness of her husband to the plaintiffs.

It will be noticed that the jury found the promise of the defendant to be that she " would pay the indebtedness of her husband if they would thereafter furnish her goods on credit," and that goods were thus furnished.    The section of our statute under which the invalidity of this promise is claimed says :

"Every agreement, contract, and promise shall be void unless such agreement, contract, or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person by him thereunto lawfully authorized; that is to say,    *    *    *    every special promise to answer for the debt, default, or misdoings of another person." [1]

I think this statute applies to this case, and the request of defendant's counsel should have been given to the jury.    The debt incurred by the husband was not the defendant's debt. Upon the claimed promise made by her, the husband's debt

---

[1] How. Stat. § 6185.

was neither canceled nor discharged, but remained against his estate. The plaintiffs could have taken proceedings the next day for its collection against the estate, and the defendant had no agreement with the plaintiffs by which she could have prevented such proceedings. The extension of time promised related entirely to the goods she should thereafter purchase, and even that time was indefinite. There is nothing in the record showing that the plaintiffs might not have brought their suit for the goods she bought as well in two days as in two months after their purchase. They did not agree to release their claim against the husband's estate for his indebtedness to them at any time or to any person, nor agree that they would not prosecute their claim against it; but they did speak discouragingly to her about taking out letters of administration upon it.

I am not able to discover what benefit or advantage she could derive from the arrangement the plaintiffs claim to have made with her, and upon which they claim th〉 promise she made to them was based. Certain it is, there was nothing in the arrangement for her benefit which she could have enforced against the plaintiffs, either at law or in equity. She could not have forced them to sell her goods on credit, any more than they could compel her to buy them. There was no time fixed when she was to buy goods, neither was the amount she might buy stated, or the length of time the credit was to be given, nor was there any time fixed within which she was to pay her husband's debt.

If there was any consideration for the claimed promise made by her to pay the debt of her husband, or any benefit or advantage to her offered by the plaintiffs, in the arrangement containing her alleged promise, the record does not disclose it; and, whatever the promise was, it is conceded not to have been put in writing, and that no memorandum thereof was ever made.

I know of no case which holds a promise to pay the debt of another, made under such circumstances, valid under our statute.

It is true the plaintiff who let the defendant have the goods, in his testimony, says he would not have done so had it not been for the arrangement he states he made with the defendant; but, if the promise upon which he acted was void, what he might or might not have done under other circumstances does not affect the validity of the defendant's alleged promise. It appears, however, he was quite anxious to sell and deliver to the defendant the plaintiffs' goods. In this case the defendant was not liable to pay her husband's debt. Her promise to pay was purely collateral. She could not legally receive or control any of the goods of the estate liable to be sold for the payment of such indebtedness under administration of the estate. She could receive no benefits from such goods, and none under the arrangement with the plaintiffs. She was therefore in possession of no fund properly belonging to the estate applicable to the payment of her husband's indebtedness. There was therefore no equitable consideration requiring her to pay such indebtedness, and her case comes fairly within the statute. *Welch v. Marvin*, 36 Mich. 59; *Baker v. Ingersoll*, 39 Id. 158; *Bresler v. Pendell*, 12 Id. 224; *Gibbs v. Blanchard*, 15 Id. 292; *Corkins v. Collins*, 16 Id. 478; *Pratt v. Bates*, 40 Id. 37; *Hake v. Solomon*, 62 Id. 377; *Bates v. Johnrowe*, 57 Id. 5½1; *Calkins v. Chandler*, 36 Id. 320; *Maule v. Bucknell*, 50 Penn. St. 53; Browne, Stat. Frauds, 214 *a*; *Fitgerald v. Dressler*, 7 C. B. (N. S.) 374; *Durant v. Allen*, 48 Vt. 58; 13 Amer. Law Reg. (N. S.) 593; *Gower v. Stewart*, 40 Mich. 747.

The view we take of the case, as presented upon this record, will render a reversal of the judgment necessary, and, under the stipulation of the parties, judgment will be rendered in this Court in favor of the plaintiffs for the sum of $456.10.

Neither party will be allowed to recover costs against the other in the court below.    The defendant is entitled to costs of this Court.

MORSE, J., concurred with SHERWOOD, J.

CHAMPLIN, J.    I concur in the result.

CAMPBELL, C. J., did not sit.